**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DAVID W. FRAZIER** **CIVIL ACTION**

**VERSUS**

**RADIOSHACK CORPORATION** **NO. 10-855-BAJ-CN**

## RULING & ORDER

This matter is before the Court on the "Objection to Notice for Records Deposition Motion to Quash" (R. Doc. 47) filed by plaintiff, David W. Frazier ("Frazier" or "plaintiff"), which the Court construes to be a motion to quash a subpoena duces tecum and notice of records deposition. Defendant, RadioShack Corporation ("RadioShack"), has filed an opposition (R. Doc. 53) relative to Frazier's motion.

## FACTS & PROCEDURAL BACKGROUND

Frazier filed this suit on December 22, 2010, alleging that his former employer, RadioShack, wrongfully terminated him on June 3, 2008, discriminated against him on the basis of his age, and retaliated against him because he filed a discrimination complaint. He claims that Radioshack's actions violated various laws, including but not limited to, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq*., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq.*, and Louisiana's Employment Discrimination Law, La. R.S. 23:301, *et seq.*

In order to obtain information concerning plaintiff's income following his June 3, 2008



J.P Morgan Chase National Corp. Services, Inc

termination at issue in this litigation, Radioshack issued a subpoena duces tecum and Notice of Records Deposition to JP Morgan Chase National Corporate Services, Inc. ("JP Morgan Chase"), seeking plaintiff's personal banking records from June 3, 2008 through the present date. In their present motion, Radioshack contends that such records are necessary to ascertain information concerning plaintiff's sources of income since June 3, 2008 because other discovery that they have obtained thus far, such as plaintiff's federal tax returns for the years 2008 through 2010, plaintiff's deposition testimony, and plaintiff's statements for a brokerage account, have provided insufficient information as to how plaintiff supported himself from the time of his June 3, 2008 termination through September 2011 when he obtained part-time employment. Plaintiff objects to the subpoena duces tecum and notice of records deposition on the basis that they seek disclosure of personal and private banking information that is privileged and to which Radioshack is not entitled because it is a private corporation and not a "government authority;"[1] that they seek information that is not relevant to his claims; and that they are overly broad in that they seek the release of joint banking account information that is the separate property of his wife, who is not a party to this lawsuit and who has not been notified by the defendant regarding the subpoena.

[1] In his motion, plaintiff asserts that the Right to Financial Privacy Act of 1978, 12 U.S.C. §3401, *et seq.*, prevents disclosure of banking records to anyone but governmental authorities.

## LAW & ANALYSIS

As an initial matter, it should be noted that a plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that it violates another person's privacy rights (such as the plaintiff's wife's privacy rights), that the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds.[2] Accordingly, plaintiff's overbreadth, relevancy, and privacy objections (asserted on behalf of his wife) relating to the fact that the subject subpoena seeks records from a joint bank account that he shares with his wife in which she has separate property must be denied for a lack of standing.[3]

Furthermore, even assuming plaintiff could assert a relevancy objection to the subject subpoena, it would be denied since this Court has previously determined, during the December 16, 2011 telephone conference in this matter, that information concerning plaintiff's income and his employment subsequent to his termination by Radioshack is relevant to this litigation, and that by filing this lawsuit, plaintiff "opened himself up" to

---

[2] *See, Public Service Co. of Oklahoma v. A Plus, Inc.*, 2011 WL 691204, *5 (W.D.Okla. 2011)(Defendants lacked standing to challenge subpoenas directed to third-parties on the basis that the subpoenas are unduly burdensome. Even if a party has standing to challenge a subpoena directed to a third party on privacy or privilege grounds, he may not challenge that subpoena on grounds that the information imposes an undue burden on the subpoenaed party); *Keybank National Ass'n v. Perkins Rowe Associates, L.L.C.*, 2011 WL 90108, at *2 (M.D.La. 2011)(defendants had standing to challenge third-party subpoenas seeking the defendants' private bank records, but lacked standing to challenge other third-party subpoenas on grounds of relevance or undue burden to the subpoenaed non-party); *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 2009 WL 1562851, *3 (D. Neb. 2009)(movant lacked standing to contest third-party subpoenas on grounds of undue burden or inconvenience).

[3] *See, Sneirson v. Chemical Bank*, 108 F.R.D. 159, 161, n. 5 (D.C.Del. 1985)(Plaintiff argued that his wife's independent right to privacy in her financial records precluded the defendant's discovery of his joint bank accounts with her. The court held that, despite the plaintiff's "zealous advocacy" of his wife's separate legal status, similar to Frazier's in the present case, he had no standing to assert a right to privacy or privilege on behalf of another party. He only had standing to challenge the defendant's discovery because *he* personally claimed a privilege in the bank records).

discovery concerning such matters.[4] In the Complaint, Frazier asserts claims for wrongful termination, discrimination, and retaliation under Title VII, the ADEA, the ADA, and the FMLA and can be awarded lost earnings or backpay in connection with those claims.[5] In response to Frazier's claims, RadioShack raised the affirmative defense that Frazier failed to mitigate his damages as required by the ADEA and Title VII. *See*, R. Doc. 8, Affirmative Defense 20. Specifically, RadioShack contends that, following his termination, Frazier failed to make reasonable efforts to obtain and maintain substantially equivalent employment to his employment at RadioShack. For RadioShack to demonstrate that Frazier failed to mitigate his damages in that manner, it must prove that Frazier failed to conduct a diligent search for employment following his termination by Radioshack.[6] In an effort at meeting its burden of proof on the mitigation defense, Radioshack gathered records from the Louisiana Workforce Commission; from plaintiff's current employer, Lofton

---

[4] The undersigned also finds that RadioShack adequately specified the materials sought by the subpoena (in terms of type and time period), as is required to overcome a motion to quash. *See, Rice v. Reliastar Life Ins. Co.*, 2011 WL 5513181 (M.D.La. 2011); *U.S. Manghis,* 2010 WL 349583, *2 (D.Mass. 2010). The subpoena seeks "[a]ny and all records associated with accounts maintained by David W. Frazier, DOB: [REDACTED]; SSN: [REDACTED] at your institution, including but not limited to statements, deposits, copies of checks written [ ] the accounts; all loan information, including but not limited to loan applications and surety agreements securing any and all loans for the period of June 3, 2008 through present." *See*, R. Doc. 53-1.

[5] *Manuel v. Texas State Technical College*, 2008 WL 4411475 (5th Cir. 2008)(awarding back pay in Title VII case related to a job termination where plaintiff properly mitigated her damages); *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264 (5th Cir. 2008); *McLean v. Runyon*, 222 F.3d 1150 (9th Cir. 2000).

[6] "Because an award of back pay is an equitable remedy designed to make the injured party whole," the U.S. Fifth Circuit Court of Appeals has held "that an injured party has a duty . . . to use reasonable diligence to attain substantially similar employment and, thereby, mitigate damages." *Jackson v. Host Intern., Inc.*, 2011 WL 2119644, **6 (5th Cir. 2011); *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 486 (5th Cir. 2007). The burden is on the employer to prove that: (1) substantially equivalent work was available; and (2) the former employee did not exercise reasonable diligence to obtain it. *Id.*, citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003). "Substantially equivalent employment is that employment which affords virtually identical promotion opportunities, compensation, job responsibilities, working conditions, and status as the position from which the [former employee] has been discriminatorily terminated." *Jackson*, at **6. If an employer can demonstrate that the former employee did not exercise reasonable diligence, it need not prove the availability of equivalent work. *Id.*

Security Services, Inc.; and from Smith Barney regarding a mortgage account from which plaintiff purportedly obtained money to support himself since 2007. However, those records and plaintiff's deposition testimony still have not made clear how plaintiff supported himself financially from the time of his June 3, 2008 termination by RadioShack through September 2011 when he obtained part-time employment, particularly during the years 2010 and 2011. Plaintiff's JP Morgan Chase bank records should reflect his source(s) of income since his June 3, 2008 termination and are therefore relevant to whether plaintiff has made reasonable efforts to secure substantially similar employment since his termination.[7] Additionally, plaintiff's bank records are relevant to plaintiff's claims for damages in this case. If plaintiff is awarded damages, the amount of damages RadioShack is required to pay may be offset by sums that plaintiff has received from other sources, such as through subsequent employment.[8]

---

[7] *See, Shirazi v. Childtime Learning Center, Inc.*, 2008 WL 4792694 (W.D.Okla. 2008)(The court found that the plaintiff's recent salary, including prior to and after his employment with the defendant, was relevant to the inquiry of what type of employment might be "substantially equivalent"); *De Bauche v. Harley-Davidson Motor Co. Operations, Inc.*, 2004 WL 260277 (7th Cir. 2004)("[I]nformation about [plaintiff's] current employment - or the extent to which she has rejected any additional employment offered to her - was relevant to [defendant's mitigation] defense, and thus discoverable").

[8] *See, Johnson v. Martin*, 473 F.3d 220, 222 (5th Cir. 2006)("Under the ADEA, "[c]ourts uniformly offset interim earnings from back pay awards in order to make the plaintiff whole, yet avoid windfall awards"); *Stephens v. C.I.T. Group/Equip. Fin., Inc.*, 955 F.2d 1023, 1028 (5th Cir. 1992)(In the context of the ADEA, courts must offset lost wage awards with post-termination earnings); *Galloway v. State of La.*, 817 F.2d 1154 (5th Cir. 1987)(plaintiff was reinstated with full back pay retroactive to the date of his suspension, subject to an offset for wages earned and unemployment benefits received); *Grace v. Ga. Gulf Corp.*, 2002 U.S. Dist. LEXIS 19997, at *12 (M.D.La. 2002)("[H]ad plaintiff proven she was entitled to damages, the award would have been offset by any sums that the plaintiff received from other sources, such as unemployment compensation or subsequent employment"); *Martin v. Anslinger, Inc.*, 794 F.Supp. 640 (S.D.Tex. 1992); *St. John The Baptist Parish Ass'n of Educators v. St. John The Baptist School Bd.*, 556 So.2d 157 (La. App. 5 Cir. 1990), citing *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730 (5th Cir. 1977) and *Merriweather v. Hercules, Inc.*, 631 F.2d 1161 (5th Cir. 1980)(Public policy does not support double recovery by an employee of unemployment benefits and wages for the same (overlapping) period of time. The decision of offset is left to the sound discretion of the trial court); *Palasota v. Haggar Clothing Co.*, 499 F.3d 474 (5th Cir. 2007)("Certain events or circumstances may serve to cut off an employee's entitlement to back pay prior to the date of the judgment, such as, for example, the plaintiff's employment in a higher-paying job or 'the plaintiff's failure to seek other employment with reasonable care and

Finally, although, generally, when a plaintiff claims a *personal* interest in the confidentiality of the information requested by a Rule 45 subpoena, he/she has standing to challenge the subpoena on that basis even though it is directed to a third party,[9] it has nevertheless been held by the U.S. Supreme Court, in *U.S. v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), that there is "no legitimate 'expectation of privacy'" in the contents of original checks and deposit slips held by a bank "[b]ecause the checks are not confidential communications but negotiable instruments to be used in commercial transactions" and that "financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *Miller*, at 442. Nothwithstanding *Miller*, some federal courts have differed on the issue of whether a person has a privilege in or a privacy right to bank records held by his bank and whether that right is sufficient to provide standing to challenge a subpoena issued to a bank. *Keybank*, at *7, n. 7. This Court, however, has previously held that a plaintiff lacked standing to challenge a subpoena issued to his bank for his bank records in the context of a civil action on privilege/privacy grounds because the plaintiff failed to cite a case decided by the U.S. Fifth Circuit Court of Appeals, or any federal court in Louisiana, holding that such standing exists. *Id.* Since Frazier has likewise failed to cite any such jurisprudence in the present case, his motion to quash RadioShack's subpoena for his

---

diligence'").

[9] *See, Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Jez v. Dow Chemical Co., Inc.*, 402 F.Supp.2d 783 (S.D. Tex. 2005)(A motion to quash or modify a subpoena under Rule 45 may only be made by the party to whom the subpoena is directed, except where the party seeking to challenge the subpoena has alleged some personal privacy right or privilege in the documents sought). *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Jez v. Dow Chemical Co., Inc.*, 402 F.Supp.2d 783 (S.D. Tex. 2005).

banking records in the context of this civil suit should be denied. Furthermore, the undersigned finds that any privacy concerns plaintiff may have relative to discovery of his banking documents in the context of this litigation (as well as any privacy concerns relating to his wife's confidential information) are sufficiently addressed by the protective order entered on May 17, 2011.[10] [11]

Furthermore, regarding Frazier's argument concerning the Right to Financial Privacy Act of 1978, 12 U.S.C. §3401, *et seq.*, such Act does not apply to a private corporation, such as RadioShack. Such Act only limits the power of a government agency to issue subpoenas for the records of bank customers. *See, Tullier v. United States DOD*, 2005 U.S. Dist. LEXIS 13495 (W.D.Tex. 2005). The Act provides no justification for a bank's noncompliance with a subpoena issued in a civil action by a private corporation. *Clayton Brokerage Company, Inc. v. Clement*, 87 F.R.D. 569 (D.Md. 1980); *Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC,* 2010 U.S. Dist. LEXIS 120344 (M.D.La. 2010).[12]

Finally, the undersigned finds that RadioShack's request for an award of the

---

[10] *See, Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, 2010 U.S. Dist. LEXIS 121192, *7 (M.D.La. 2010)("To the extent that the subpoenas require production of confidential or proprietary information, the protective order previously issued affords [mover] sufficient protection from public disclosure").

[11] This Court has previously noted that La. R.S. 6:333, by its terms, does not create a privilege that bars discovery of financial records from a banking institution that are relevant and otherwise discoverable in a particular case. *KeyBank*, at *6. Instead, that statute only provides for specific procedures that are to be followed before a customer's financial records may be produced by a bank. *Id.*, at *6-7. Those procedures appear to have been followed by RadioShack in that plaintiff was personally served with the subpoena on December 21, 2011, which is more than fifteen (15) business days prior to the January 16, 2012 return date on the subpoena, and because RadioShack provided an affidavit establishing that service. *See*, La. R.S. 6:333.

[12] *See also, Sneirson*, at 161 (The privilege against a bank's disclosure of a customer's financial records in a bank's custody is not established by reference to the Right to Financial Privacy Act, 12 U.S.C. §3401, *et seq.*, which limits government access to individual financial records, not access in litigation between two (2) private parties).

attorney's fees that it incurred in opposing the present motion should be granted. Pursuant to Fed. R. Civ. P. 37(a)(5)(B), where a discovery motion (such as a motion to quash) is denied, a court must require the movant, the attorney filing the motion, or both to pay the party who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney fees, unless it is determined that the motion was "substantially justified" or that other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B). As mentioned above, during the December 16, 2011 telephone conference in this matter, wherein the undersigned denied plaintiff's prior motion to quash subpoenas directed to Louisiana Workforce Commission and Lofton Security Services concerning plaintiff's post-termination employment and income information, the undersigned expressly informed plaintiff that, by filing this suit, he had "opened himself up" to discovery concerning his income and employment.

According to RadioShack's present opposition, despite the undersigned's comments during that conference, plaintiff nevertheless filed the present motion, seeking to quash a subpoena requesting income information through his banking records. RadioShack also informs the Court that it contacted plaintiff and requested that he voluntarily withdraw the present motion to quash in light of the undersigned's advice and decision on his prior motion to quash during the December 16, 2011 conference. However, plaintiff refused to do so, resulting in RadioShack incurring attorney's fees to oppose the motion. Because plaintiff has not demonstrated that the present motion was substantially justified[13] and that

[13] Considering this Court's express recognition, in *KeyBank,* that (1) La. R.S. 6:333 does not create a privilege barring discovery of financial records that are relevant and otherwise discoverable in a particular case; (2) that, under U.S. Supreme Court jurisprudence, there is "no legitimate 'expectation of privacy'" in the contents of original checks, deposit slips, and financial statements; (3) that the Right to Financial Privacy Act, 12 U.S.C. §3401, *et seq.*, only limits a government authority's ability to acquire

an award of attorney's fees to RadioShack is unjust,[14] RadioShack will be awarded the reasonable amount of attorney's fees that it incurred in connection with this motion.

Accordingly;

**IT IS ORDERED** that the "Objection to Notice for Records Deposition Motion to Quash" (R. Doc. 47) filed by plaintiff, David W. Frazier, which the Court construes to be a motion to quash the subpoena duces tecum and notice of records deposition directed to J.P. Morgan Chase National Corporate Services, Inc., is hereby **DENIED.**

**IT IS FURTHER ORDERED** that J.P. Morgan Chase National Corporate Services, Inc., shall produce the documents requested by the subpoena to defendant, RadioShack Corporation, subject to the protective order in place in this matter, within ten (10) days of receiving this Order, and can do so by retrieving the documents that it sent to the Court for *in camera* inspection, pursuant to the Court's February 23, 2012 Order, as soon as possible.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail a copy of this Order to J.P. Morgan Chase National Corporate Services, Inc., through its Registered Agent, CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

---

personal financial information from banks and similar financial institutions and does not apply when records are sought in the context of a civil action between private parties; and (4) that a private party only has standing to object to a third party subpoena when he or she has a "specific personal right which would bar production" of his/her financial records, Frazier did not have a "substantial justification" for filing the present motion.

[14] Although Frazier filed a supplemental memorandum in support of his motion to quash after RadioShack filed its opposition requesting attorney's fees, he did not present any specific arguments as to why an award of attorney's fees would be unjust.

**IT IS FURTHER ORDERED** that, defendant, RadioShack Corporation, is entitled to an award of the reasonable attorney's fees that it incurred in opposing the present motion and that, in connection with that award, the parties are to do the following:

(1) If the parties agree to the amount of attorney's fees, plaintiff shall pay that amount;

(2) If the parties do not agree to the amount, RadioShack shall, within twenty (20) days of the date this order is signed, submit to the Court a report setting forth the amount of attorney's fees incurred in obtaining this Order; and

(3) Plaintiff shall have ten (10) days after the filing of RadioShack's report to file an opposition.

Signed in chambers in Baton Rouge, Louisiana, March 12, 2012.

**MAGISTRATE JUDGE CHRISTINE NOLAND**